# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN TSUI GRUNDMANN,<br><br>*Plaintiff*,<br><br>vs.<br><br>DONALD J. TRUMP, in his official capacity as President,<br><br>and<br><br>COLLEEN DUFFY KIKO, in her official capacity as chairman of the Federal Labor Relations Authority,<br><br>*Defendants*. | Case No. 1:25-CV-00425-SLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................................... 3

ARGUMENT .......................................................................................................................................... 6

    I.    PLAINTIFF GRUNDMANN IS ENTITLED TO SUMMARY JUDGMENT ................... 6

        A.  Based on the Undisputed Material Facts, Plaintiff Grundmann's Removal Violates 5 U.S.C. § 7104(b). .................................................................................................................. 6

        B.  The President's Action Contravenes *Humphrey's Executor*. .......................................... 7

    II.   PLAINTIFF GRUNDMANN IS ENTITLED TO A PRELIMINARY INJUNCTION .... 10

        A.  Plaintiff Grundmann Has a Substantial Likelihood of Success for the Same Reasons She Is Entitled to Summary Judgment. ........................................................................ 11

        B.  Plaintiff Grundmann Continues to Suffer Irreparable Harm. ...................................... 11

        C.  The Balance of the Equities and the Public Interest Favor Plaintiff Grundmann. ....... 14

CONCLUSION .................................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Apotex, Inc. v. FDA*,
  449 F.3d 1249 (D.C. Cir. 2006) ....................................................................................... 10

*Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*,
  573 F.3d 815 (D.C. Cir. 2009) ......................................................................................... 10

*Berry v. Reagan*,
  No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ............................................... 13, 14

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ......................................................................................... 11

*Dellinger v. Bessent*,
  Order, ECF No. 14, Feb. 12, 2025, No. 25-cv-0385 (D.C. Cir. 2025) ................. 12, 13, 14

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ................................................................................................. passim

*League of Women Voters v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ............................................................................................. 11

*Nken v. Holder*,
  556 U.S. 418 (2009) ......................................................................................................... 14

*Sampson v. Murray*,
  415 U.S. 61 (1974) .................................................................................................... 12, 13

*Seila Law v. Consumer Fin. Prot. Bureau*,
  591 U.S. 197 (2020) ..................................................................................................... 9, 10

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ................................................................................... 10, 11

*Vasquez v. District of Columbia*,
  110 F.4th 282 (D.C. Cir. 2024) .......................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................................. 10

**Statutes**

5 U.S.C. § 7101(a) .................................................................................................................... 2

5 U.S.C. § 7104(a) .................................................................................................................... 2

5 U.S.C. § 7104(b) .............................................................................................................. *passim*

5 U.S.C. § 7104(c) .............................................................................................................. *passim*

5 U.S.C. § 7105 ........................................................................................................................ 2

**Legislative History**

124 Cong. Rec. 126 (1978), *reprinted in* Legislative History of the Civil Service Reform Act of 1978 (1979) ......................................................................................................... 7

Pub. L. 95–454, title VII, § 7104 (1978), 92 Stat. 1196 ................................................................ 3

**Constitutional Provisions**

U.S. Const. , Art. II, § 2, cl. 2 .................................................................................................... 7

**Secondary Sources**

Michael Bender et al, *Trump Administration Deepens Pressure on Federal Workers to Resign*, N.Y. Times (Feb. 5, 2025) ........................................................................ 15

Tami Luhby, et al, *Thousands of Probationary Employees Fired as Trump Administration Directs Agencies to Carry Out Widespread Layoffs*, CNN (Feb. 14, 2025) .......................................... 15

## INTRODUCTION

Plaintiff Susan Tsui Grundmann was nominated by President Joe Biden as a Member of the Federal Labor Relations Authority ("FLRA" or "the Authority") and confirmed by the U.S. Senate on May 12, 2022, to a five-year term expiring on July 1, 2025. President Biden then designated her as Chairman.

Congress established the Authority as a multimember, bipartisan independent agency responsible for adjudicating disputes within the federal workforce. One of the independent aspects of the Authority is that "Members of the Authority . . . may be removed by the President only upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7104(b).

On February 10, 2025, at 10:46 pm, Plaintiff received an email from Trent Morse, Deputy Director of the White House Office of Presidential Personnel, which stated in its entirety: "On behalf of President Donald J. Trump, I am writing to inform you that your position on the Federal Labor Relations Authority is terminated, effective immediately. Thank you for your service." Declaration of Susan Tsui Grundmann (Grundmann Decl.) at ¶ 3 and Ex. A.

President Trump's action constitutes a clear violation of 5 U.S.C. § 7104(b) as he did not provide cause, notice, and a hearing. Nearly a century ago, the Supreme Court established in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) that a president cannot not remove the head of an independent agency when Congress limits the president's removal powers by statute.

For the reasons set forth below, Plaintiff Grundmann is entitled to summary judgment as there is no genuine dispute as to the material facts. She is also entitled to injunctive relief that preserves the status quo by permitting her to continue performing her statutorily created duties as

Member of the Authority because she can establish a likelihood of success on the merits, continues to suffer irreparable harm, and the balance of interests and the public interest weigh in her favor.

## STATUTORY FRAMEWORK

In 1978, Congress enacted the Federal Service Labor-Management Relations Statute (the "Statute"), 5 U.S.C. Ch. 71, as part of the comprehensive Civil Service Reform Act, Pub. L. 95-454, 92 Stat. 1111 (Oct. 13, 1978). In passing the Statute, Congress explicitly found that "the statutory protection of the right of [federal] employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them… safeguards the public interest, contributes to the effective conduct of public business, and facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment[.]" 5 U.S.C. § 7101(a)(1)(A)-(C).

Congress created the Federal Labor Relations Authority to "carry[] out the purpose" of the Statute. 5 U.S.C. § 7105(a)(1). The FLRA's primary statutory duties are quasi-judicial, in that they encompass resolving unfair labor practice complaints, determining the appropriateness of units for labor organization representation, adjudicating exceptions to arbitrators' awards, adjudicating legal issues relating to the duty to bargain, and resolving impasses during collective bargaining. 5 U.S.C. § 7105(a)(2).

In 5 U.S.C. § 7104(a) through (c), Congress set forth the composition, appointment, removal, terms, and replacement of the Authority. In Subsection 7104(a), Congress designated the Authority as a multimember, bipartisan agency: "The Federal Labor Relations Authority is composed of three members, not more than 2 of whom may be adherents of the same political party." 5 U.S.C. § 7104(a).

In Subsection 7104(b), Congress provided that Members of the Authority (1) are appointed by the President with the advice and consent of the Senate and (2) may only be removed after notice and a hearing and only for cause: "Members of the Authority shall be appointed by the President by and with the advice and consent of the Senate, and may be removed by the President only upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7104(b). Subsection 7104(b) further delegated to the President the authority to designate a Chairman: "The President shall designate one member to serve as Chairman of the Authority. The Chairman is the chief executive and administrative officer of the Authority." 5 U.S.C. § 7104(b).

Subsection 7104(c) sets forth the terms of Authority members. Members serve five-year terms: "A member of the Authority shall be appointed for a term of 5 years." 5 U.S.C. § 7104(c). When Congress initially enacted the FLRA, it staggered the terms so that no more than two years would elapse before a member's term expired. Pub. L. 95–454, title VII, § 7104 (1978), 92 Stat. 1196. Congress has also included a provision where a member's term "shall not expire until the earlier of (1) the date on which the member's successor takes office, or (2) the last day of the Congress beginning after the date on which the member's term of office would (but for this paragraph) expire." 5 U.S.C. 7104(c).

**FACTUAL BACKGROUND**

President Joe Biden nominated Ms. Grundmann as a Member of the Federal Labor Relations Authority, and the U.S. Senate confirmed her on May 12, 2022, to a five-year term expiring on July 1, 2025. After July 1, 2025, her term would not expire before the earlier of the day on which her successor takes office or the last day of Congress beginning after the date on which her term of office would expire, on or about January 2029. President Biden designated Ms.

3

Grundmann as Chairman of the Authority, and she served in that role through February 10, 2025. Grundmann Decl. ¶ 1.

Prior to serving as a Member and Chairman of the Authority, her professional positions include serving as the Chairman of the Merit Systems Protection Board from 2009-2017, the Executive Director and Chief Operating Officer of the U.S. Congress Office of Congressional Workplace Rights, General Counsel to the National Air Traffic Controllers Association, and General Counsel for the National Federation of Federal Employees. She served as an adjunct instructor on federal law at the William W. Winpisinger Education and Technology Center from 2003-2009. She received her J.D. from the Georgetown University Law Center and her bachelor's degree at American University. Grundmann Decl. ¶ 2.

On February 10, 2025, at 10:46 pm, Ms. Grundmann received an email from Trent Morse, Deputy Director of the White House Office of Presidential Personnel, which stated in its entirety: "Susan, On behalf of President Donald J. Trump, I am writing to inform you that your position on the Federal Labor Relations Authority is terminated, effective immediately. Thank you for your service," Grundmann Decl. ¶ 3 & Ex. A.

Since receiving that email, Ms. Grundmann has been deprived of the ability to carry out her duties as a Member. Her access to email and case files required to adjudicate pending cases have been abruptly terminated. Her staff has been dissolved and are currently being reassigned to the remaining Members. Her removal therefore has had a disruptive effect on the Authority and its work. Grundmann Decl. ¶ 4.

On February 11, 2025, President Trump named Authority Member Colleen Duffy Kiko as Chairman of the Authority. Grundmann Decl. ¶ 5.

The role of the three-member Authority, acting as a collective, is to serve as an appellate body that hears cases. With two Members, the Authority still retains a quorum and can issue decisions when the remaining Members agree. When there is no agreement, the case goes into abeyance pending the arrival of a third Member to break the tie. Ms. Grundmann served as part of a two-member Authority for about eighteen months of her tenure with Ms. Kiko. During that time, approximately one-third of the cases were deadlocked. *Id.* at ¶ 6-7.

Without the full complement of Authority Members—only two at the moment—current and new cases where the remaining Members do not agree, will be held in abeyance. That causes parties confusion as to what terms of employment can or cannot be negotiated. This is time and resource consuming and potentially delays when and whether agencies can implement certain changes in working conditions. *Id.* at ¶ 8.

Ms. Grundmann was not able to finish her work on pending cases, which were previously held in abeyance and are now back in abeyance. Her unlawful removal therefore comprises the continuity of the Authority's work generally, and more specifically the adjudication of cases before the Authority. *Id.* at ¶ 9.

Leaving cases in abeyance results in increased costs and confusion to the parties. Without effective and efficient resolution, additional disputes often arise, thereby creating increased litigation on related, or even other, matters. Moreover, many Authority cases include remedies for back pay, differentials, allowances, and interest, which continue to accumulate as a case sits in abeyance. Delays in these cases add to the bottom line of agencies, the cost of which is ultimately borne by taxpayers. *Id.* at ¶ 10.

A fully functioning FLRA is needed more than ever now. With the unprecedented changes to the federal workforce including return to in-person work mandates, changes in telework policies,

and potential realignment of workforce issues, the FLRA will increasingly become the sole forum to adjudicate and resolve issues for federal agencies, unions, and the 2.1 million non-postal employees that the unions represent. *Id.* at ¶ 11.

This is the first time ever that a president has removed a Member before their term expired under 5 U.S.C. 7104(c). *Id.* at ¶ 12. Ms. Grundmann received no hearing and no basis for her removal was stated.

## ARGUMENT

**I.     PLAINTIFF GRUNDMANN IS ENTITLED TO SUMMARY JUDGMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if there is no genuine issue of material fact and the party is entitled to judgment as of matter of law. *Vasquez v. District of Columbia*, 110 F.4th 282, 287 (D.C. Cir. 2024). In this case, the only material facts are that Ms. Grundmann was a sitting member of the Authority; President Trump removed her from that position on February 10, 2024, without a showing of cause and a hearing and notice; and she has not been able to fulfill her duties since. This is a clear violation of 5 U.S.C. § 7104(b). Moreover, Congress had the authority to enact the removal language contained in 5 U.S.C. § 7104(b) based on governing Supreme Court precedent.

**A.     Based on the Undisputed Material Facts, Plaintiff Grundmann's Removal Violates 5 U.S.C. § 7104(b).**

The unambiguous language of the Statute and the undisputed facts clearly demonstrate that Plaintiff Grundmann's removal violates 5 U.S.C. § 7104(b). Subsection 7104(b) provides that the President may remove a sitting member of the Authority "only upon notice and hearing and only for inefficiency, neglect of duty, or malfeasance in office." At the time of the removal email, Ms. Grundmann was a sitting member of the Authority. The short removal email offered *no* reason for

6

the President's decision, let alone a reason that satisfied the statutory standard. As a result of the email, Ms. Grundmann has not been able to perform her duties as a Member of the Authority.

Because the statute is clear and ambiguous, it is not necessary to delve into the legislative history but that history is notable in two respects. First, Congress emphasized the importance of "an independent Federal labor relations authority" to obtain "the resolution of disputes by the intervention of neutral, independent, third parties…" 124 Cong. Rec. 126 (1978), *reprinted in* Legislative History of the Civil Service Reform Act of 1978 at 811 (1979). As Representative William D. Ford, one of the bill's supporters, stated:

> One of the central elements of a fair labor relations program is effective, impartial administration. Title VII provides for the creation of an independent and neutral Federal labor relations authority to administer the Federal labor management program…[.] Currently the Federal labor-management program is administered by the Federal Labor Relations Council which is composed of three administration officials… none of whom can be considered neutral.

*Id.* Furthermore, Congress noted that limiting the removal of an Authority Member except for cause was an essential guardrail for ensuring the FLRA's impartiality and independence.

> The Federal labor relations authority, patterned after the NLRB, would insure that the administration of this program is free from bias toward either party. Impartiality is guaranteed by protecting authority members from unwarranted "Saturday night" removals.

*Id.*

The undisputed material facts show a clear violation of Subsection 7104(b). That is sufficient to warrant granting summary judgment in Plaintiff Grundmann's favor.

### B. The President's Action Contravenes *Humphrey's Executor*.

The Appointments Clause of the Constitution, Article II, Section 2, Clause 2 sets forth a process where the President nominates and the Senate confirms Officers of the United States. The Clause does not explicitly provide for how officers are removed but in *Humphrey's Executor*, the

Supreme Court addressed the issue of whether the President could remove the independent head of a bipartisan, multimember agency without cause in spite of congressional statute to the contrary. *Id.* at 622. Faced with a statute and facts quite similar to those presented here, the Supreme Court in *Humphrey's Executor* unanimously held that it was constitutional for Congress to proscribe the President's removal power by including a removal clause and that the President could not fire the agency head without cause under the circumstances.

Much like Plaintiff Grundmann, William Humphrey was a member of the Federal Trade Commission (FTC) nominated by President Hoover and confirmed by Senate for a term ending in 1938. When Franklin Roosevelt became President, he decided to remove Humphrey because of their differing views. *Id.* at 618–19. President Roosevelt subsequently, in correspondence with Humphrey, and requested Humphrey's resignation. *Id.* at 617–18. When Humphrey refused, President Roosevelt wrote him, "Effective as of [October 7, 1933] you are hereby removed from the office of Commissioner of the Federal Trade Commission." *Id.* at 619. Humphrey filed suit.

The statute governing the appointment, bipartisanship composition, staggered terms, and removal of FTC Commissioners was materially similar to Subsection 7104(b), the statute governing the Authority:

> Not more than three of the commissioners shall be members of the same political party. The first commissioners appointed shall continue in office for terms of three, four, five, six, and seven years, respectively, from the date of the taking effect of this Act (September 26, 1914), the term of each to be designated by the President, but their successors shall be appointed for terms of seven years . . . except that any person chosen to fill a vacancy shall be appointed only for the unexpired term of the commissioner whom he shall succeed. The commission shall choose a chairman from its own membership. No commissioner shall engage in any other business, vocation, or employment. Any commissioner may be removed by the President for inefficiency. neglect of duty, or malfeasance in office.

8

*Id.*

The Court held that this removal clause was constitutional, and therefore, the President lacked the authority to remove Commissioner Humphrey. The Court focused on aspects of the agency's composition and the Commission's functions in reaching its determination, namely, that the Commission's multimember and bi-partisan composition enabled it to "act with entire impartiality," 295 U.S. at 624, and that the staggered terms of commissioners were "so arranged that the membership would not be subject to complete change at any one time," *id.* The Court further noted that the function of the Commission, was predominantly quasi-legislative and quasi-judicial, as opposed to executive, and thus permitted Congress to give the Commission more independence from the President's control. *Id.* at 624-25.

More recently, in *Seila Law v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), the Court reaffirmed the holding of *Humphrey's Executor*. In *Seila Law*, the Court held that the for-cause removal clause concerning the Director of the Consumer Financial Protection Bureau was unconstitutional. At the heart of the Court's concern in *Seila* was that the CFPB statute placed too little accountability and too much authority in one person. The Court therefore emphasized the marked contrast between the CFPB's structure and that of "traditional independent agencies," 591 U.S. at 207, such as the FTC in *Humphrey's Executor* and the Authority today:

> In organizing the CFPB, Congress deviated from the structure of nearly every other independent administrative agency in our history. Instead of placing the agency under the leadership of a board with multiple members, Congress provided that the CFPB would be led by a single Director, who serves for a longer term than the President and cannot be removed by the President except for inefficiency, neglect, or malfeasance. The CFPB Director has no boss, peers, or voters to report to. Yet the Director wields vast rulemaking, enforcement, and adjudicatory authority over a significant portion of the U. S. economy.

9

*Id.* at 203. The Court went on to find that the single-Director structure of the CFPB was a "historical anomaly" that was "incompatible with our constitutional structure." *Seila Law*, 591 U.S. at 222. The Court contrasted the case before it with *Humphrey's Executor*, about which the Court stated: "[W]e held that Congress could create expert agencies led by a *group* of principal officers removable by the President only for good cause." *Seila Law*, 591 U.S. at 204 (emphasis in original). Referring specifically to *Humphrey's Executor* and subsequent precedents, the Court went on to say that it was not "revisit[ing] our prior decisions allowing certain limitations on the President's removal power. *Id.*

Like the FTC in Humphrey's Executor and unlike the CFPB Director in Seila Law, the Authority is a traditional independent agency. It is bipartisan with a multimember board of experts who serve five-year, staggered terms and whose functions are primarily quasi-judicial. Thus, Congress's decision to limit the President's removal power to instances of "inefficiency, neglect of duty, or malfeasance in office" is constitutional based on *Humphrey's Executor*.

## II. PLAINTIFF GRUNDMANN IS ENTITLED TO A PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of suffering irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). While there exists an "open question" in this Circuit, which employs the "sliding scale" approach, as to the weight to be accorded to each of these factors, a failure to show a substantial likelihood of success on the merits has been deemed sufficient to defeat a motion for a preliminary injunction. *Ark. Dairy Coop. Ass'n, Inc. v. U.S. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009); *Apotex, Inc. v. FDA*, 449 F.3d 1249, 1253–

54 (D.C. Cir. 2006); *see also League of Women Voters v. Newby*, 838 F.3d 1, 6-8 (D.C. Cir. 2016). Courts in this Circuit have also held that demonstrating irreparable harm is equally important and may provide grounds to refuse issuing an injunction "even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Plaintiff Grundmann satisfies all four factors required for seeking a preliminary injunction. She has been deprived of her statutorily created right to serve as Chairman of the Authority until her term expires. She seeks to maintain the status quo and requests reinstatement to her position so that she may fulfill her duties as a Member of the Authority.

### A. Plaintiff Grundmann Has a Substantial Likelihood of Success for the Same Reasons She Is Entitled to Summary Judgment.

As discussed in Section I of the Argument, Plaintiff has demonstrated that she is entitled to judgment as a matter of law because her unlawful removal violates Section 7104(b) and because Section 7104(b) is constitutional. That showing is more than sufficient for Plaintiff Grundmann to meet the "substantial likelihood of success on the merits" standard. *Sherley*, 644 F.3d at 393. The first factor, therefore, strongly weighs in Plaintiff's favor.

### B. Plaintiff Grundmann Continues to Suffer Irreparable Harm.

Plaintiff must next show that she is likely to suffer irreparable harm absent preliminary relief. In this Circuit, irreparable injury must be "both certain and great" and "actual and not theoretical." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. And the injury "must be beyond remediation." *Id.*

Plaintiff's injury is actual and certain because she was unlawfully removed from her position, abruptly locked out of her email and case files, and deprived of the ability to perform her duties as

11

Chairperson and Member of the Authority. Grundmann Decl. ¶¶ 3–4. The ability to carry out those duties until the end of her term are part of her statutorily created entitlement and the deprivation of those rights cannot be remediated other than through injunctive relief. Grundmann Decl. ¶ 1. And although federal employees seeking injunctive relief are required to make a strong showing of irreparable injury sufficient "in kind and degree to override the factors cutting against the general availability of preliminary injunctions in Government personnel cases," *Sampson v. Murray*, 415 U.S. 61, 48 (1974), this is the type of "genuinely extraordinary situation" as opposed to the merely "routine case" giving rise to the need for issuance of injunctive relief, *see id.* at 92 fn. 68.

Plaintiff Grundmann's removal is anything but the "routine case" that was before the Court in *Sampson*. *Id.* at 92 fn. 68. To Plaintiff's knowledge, this is the first time ever that a president has removed a Member without cause and without providing for notice and an opportunity to be heard, and the first time a Member has been removed before their term expired under Section 7104(c). Grundmann Decl. ¶ 11. Unlike the plaintiff in *Sampson*, a wrongfully discharged probationary employee who alleged that the "discharge would deprive her of income and cause her to suffer the embarrassment of being wrongfully discharged," *id.* at 66, Plaintiff Grundmann has not alleged an injury in the form of loss of income or damage to her reputation. And where in *Sampson*, the Court concluded that the plaintiff could avail herself of the protections afforded to her under the Civil Service Act in the form of receiving backpay and other damages, *id.* at 83, here Plaintiff Grundmann does not seek any type of monetary damages, and indeed, no amount of damages could remedy her deprivation.

The irreparable injury here, therefore, cannot be compared to "loss of income or embarrassment" involved in typical employment action. *Sampson*, 415 U.S. at 83; *see also*

12

*Dellinger v. Bessent*, Order (Dellinger Order), ECF No. 14, Feb. 12, 2025, No. 25-cv-0385 (D.C. Cir. 2025) (notice of appeal filed). And that is because Plaintiff's injury arises less from any personal interest in employment, and more from her public interest in carrying out her statutory duties as the Chairperson and a Member of the Authority. In other words, the injury to Plaintiff Grundmann and the injury to the Authority are one and the same. In *Berry v. Reagan*, No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983), a district court, faced with a similar set of facts as here—involving President Reagan's decision to terminate members of the U.S. Commission on Civil Rights who were appointed by the President and confirmed by the Senate one month before the Commission was set to expire—found that the President's unlawful removal amounted to irreparable harm that warranted injunctive relief. *Id.* at 5. Part of the reason for issuing an injunction against the termination of the individual members was the "disruptive effect" on the Commission's activities in the final month and the impact that a lack of "a quorum" would have on the Commission's final activities. *Id.*

Plaintiff Grundmann's removal implicates similar issues. Her abrupt departure has undoubtedly had a disruptive effect on the Authority and its ability to carry out its work in an efficient manner. Grundmann Decl. ¶ 4. Without the full complement of Members, cases in which Members disagree (not a rare phenomena) are deadlocked and go into abeyance pending the arrival of a third Member. *Id.* ¶¶ 7–8. This causes confusion, time and resource delays, increases costs, and compromises the overall work of the Authority. *Id.* ¶¶ 9–10. And even if a new Member were to be nominated and confirmed to the Authority, that would not mitigate the harms to the Authority's ability to function without her. Recently, in *Dellinger*, involving the unlawful removal of Special Counsel Hampton Dellinger, the district court addressed this issue. The court noted that even "with another individual" who might take Special Counsel Dellinger's place such that

"agency is still up and running in some format, with some person at the helm, is not the point." *Dellinger* Order at 23, ECF No. 14, No. 25-cv-0385. Rather, the court remarked, it was the lack of "confidentiality and continuity of ongoing matters under his purview" emanating from the Special Counsel's removal that supported the need for injunctive relief. *Id.* So too here. Plaintiff Grundmann's abrupt removal deprived her of finishing her work on ongoing cases, and furthermore, her staff has been dissolved or are currently being reassigned to other Members. Grundmann Decl. ¶¶ 4, 9. Her inability to perform her statutory obligations constitutes a strong showing of irreparable harm, tipping the second preliminary injunction factor in Plaintiff's favor.

### C. The Balance of the Equities and the Public Interest Favor Plaintiff Grundmann.

Lastly, the balance of the equities and the public interest also weigh in Plaintiff's favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ( in a motion for injunction where government is opposing party, third and fourth factors "merge"). First, the injunction that Plaintiff seeks would "not work any hardship on the defendant[s]." *Berry*, 1983 WL 538, at *6. The President has no legal right to remove Ms. Grundmann from office. There is a statutorily prescribed method for the President to follow to replace the Chairman at the conclusion of her term later this year. Removing Ms. Grundmann in clear violation of the statute inhibits the Authority from carrying out its congressionally mandated duties. There is no public interest in hampering the statutory obligations of an agency created by Congress.

Second, absent relief from this Court, the Authority can deadlock and its cases will go into abeyance such that the public interest "strongly favors" an injunction in this case. *Berry*, 1983 WL 538, at *6. As discussed above, during the eighteen-month period that Plaintiff Grundmann served as part of a two-member Authority, approximately one-third of the Authority's cases deadlocked, leading to duplicative disputes and resource waste. The Trump Administration's recent actions

include terminating thousands of employees and its call to target hundreds of thousands more. *See* Tami Luhby, et al, *Thousands of Probationary Employees Fired as Trump Administration Directs Agencies to Carry Out Widespread Layoffs*, CNN (Feb. 14, 2025). These permutations on restructuring the government have caused fear and uncertainty among career civil servants and agency officials. *See* Michael Bender et al, *Trump Administration Deepens Pressure on Federal Workers to Resign*, N.Y. Times (Feb. 5, 2025). A fully functioning Authority has not been needed more.

## CONCLUSION

For the foregoing reasons, Plaintiff Susan Tsui Grundmann respectfully requests that the Court grant her Motion for Preliminary Injunction and Summary Judgment order Defendant Kiko to enable or refrain from denying Ms. Grundmann her ability carry out her statutorily prescribed duties as a Member of the Authority.

Dated: February 14, 2025                               Respectfully submitted,

                                                       */s/   Jon M. Greenbaum*
                                                       Norman L. Eisen, D.C. Bar #435051
                                                       Tianna J. Mays, D.C. Bar #90005882 (pro hac forthcoming)
                                                       Jon M. Greenbaum, D.C. Bar #489887
                                                       Pooja Chaudhuri, D.C. Bar #888314523
                                                       STATE DEMOCRACY DEFENDERS FUND
                                                       600 Pennsylvania Avenue SE #15180
                                                       Washington, DC 20003
                                                       Tel: (202) 601-8678
                                                       norman@statedemocracydefenders.org
                                                       tianna@statedemocracydefenders.org
                                                       jgreenbaum@justicels.com
                                                       pooja@statedemocracydefenders.org