**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SUSAN TSUI GRUNDMANN, | |
| *Plaintiff*, | |
| *v.* | |
| DONALD J. TRUMP, in his official capacity as President of the United States, | Civil Action No. 1:25-cv-425-SLS |
| and | |
| COLLEEN DUFFY KIKO, in her official capacity as Chairman of the Federal Labor Relations Authority, | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.     Statutory Background ........................................................................................... 2

II.    This Case ............................................................................................................. 5

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 6

I.     Restrictions On The Removal of FLRA Members Are Inconsistent With The President's Constitutional Authority And Are Therefore Unlawful. ................................. 7

II.    Even If The FLRA's Removal Protections Were Lawful, Plaintiff Would Not Be Entitled To Relief. ........................................................................................................ 12

       A.    Plaintiff Is Not Entitled To Reinstatement............................................. 12

       B.    Plaintiff Is Not Entitled To Any Injunction. .......................................... 16

             1.  Plaintiff Is Not Likely To Succeed On The Merits........................ 16

             2.  Plaintiff Cannot Establish Irreparable Harm................................. 16

             3.  The Balance Of Equities And Public Interest Favor Defendants. .................. 19

CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*,
  834 F.2d 174 (D.C. Cir. 1987) ................................................................................... 3

*Anatol Zukerman & Charles Krause Reporting, LLC v. United States Postal Serv.*,
  64 F.4th 1354 (D.C. Cir. 2023) ............................................................................... 16

*Baker v. Carr*,
  369 U.S. 186 (1962) ................................................................................................ 14

*Berry v. Reagan*,
  No. 83-cv-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983),
  *vacated*, 732 F.2d 949 (D.C. Cir. 1983) ......................................................... 14, 18

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ...................................................................................................... 9

*Burns v. GAO Emps. Fed. Credit Union*,
  No. 88-cv-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988) ................................ 17, 18

*Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*,
  367 U.S. 886 (1961) ................................................................................................ 20

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) .......................................................................... 16, 19

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) .................................................................................................. 9

*Collins v. Yellen*,
  594 U.S. 220 (2021) .......................................................................................... 10, 21

*Davis v. Billington*,
  76 F. Supp. 3d 59 (D.D.C. 2014) ........................................................................... 17

*EEOC v. City of Janesville*,
  630 F.2d 1254 (7th Cir. 1980) ............................................................................... 17

*English v. Trump*,
  279 F. Supp. 3d 307 (D.D.C. 2018) ....................................................................... 18

*Farris v. Rice*,
  453 F. Supp. 2d 76 (D.D.C. 2006) ......................................................................... 17

*Franks v. Nimmo*,
  683 F.2d 1290 (10th Cir. 1982) ................................................................. 17

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .......................................................... 7, 8, 14, 20

*Gill v. Whitford*,
  585 U.S. 48 (2018) ................................................................................... 19

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................. 13

*Harkrader v. Wadley*,
  172 U.S. 148 (1898) ................................................................................. 14

*Hetreed v. Allstate Ins. Co.*,
  135 F.3d 1155 (7th Cir. 1998) ................................................................. 17

*Humphrey's Executor v. United States*,
  295 U.S. 602 (1935) ....................................................................... *passim*

*In re Sawyer*,
  124 U.S. 200 (1888) ........................................................................... 13, 14

*Levesque v. Maine*,
  587 F.2d 78 (1st Cir. 1978) ..................................................................... 17

*Lewis v. Casey*,
  518 U.S. 343 (1996) ................................................................................. 19

*Lucia v. Sec. & Exch. Comm'n*,
  585 U.S. 237 (2018) ................................................................................. 21

*Mallory v. Norfolk Southern Railway Co.*,
  600 U.S. 122 (2023) ................................................................................. 10

*Marxe v. Jackson*,
  833 F.2d 1121 (3d Cir. 1987) ................................................................... 17

*Mori v. Dep't of the Navy*,
  731 F. Supp. 2d 43 (D.D.C. 2010),
  *dismissing appeal*, 2010 WL 5371504 (D.C. Cir. Dec. 28, 2010) ............. 6

*Morrison v. Olson*,
  487 U.S. 654 (1988) ............................................................................. 8, 11

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................................. 15

*Myers v. United States*,
   272 U.S. 52 (1926) ............................................................................ 7, 12, 13, 18

*Nat. Treasury Emps.' Union v. Fed. Lab. Rels. Auth.*,
   774 F.2d 1181 (D.C. Circ. 1985) ................................................................. 3

*Nichols v. Agency for Int'l Dev.*,
   18 F. Supp. 2d 1 (D.D.C. 1998) .............................................................. 17

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................... 16

*Parsons v. United States*,
   167 U.S. 324 (1897) ............................................................................... 12

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
   881 F.3d 75 (D.C. Cir. 2018) .................................................................... 8

*Pro-Football, Inc. v. Harjo*,
   284 F. Supp. 2d 96 (D.D.C. 2003) ............................................................ 6

*Rubino v. City of Mount Vernon*,
   707 F.2d 53 (2d Cir. 1983) ..................................................................... 17

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................. 17, 20

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
   591 U.S. 197 (2020) ........................................................................ *passim*

*Severino v. Biden*,
   71 F. 4th 1038 (D.C. Cir. 2023) ............................................................ 7, 10

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ................................................................ 16

*Shurtleff v. United States*,
   189 U.S. 311 (1903) ............................................................................... 12

*Soc. Sec. Admin., Baltimore, Md. v. Fed. Lab. Rels. Auth.*,
   201 F.3d 465 (D.C. Cir. 2000) .................................................................. 5

*Swan v. Clinton*,
   100 F.3d 973 (D.C. Cir. 1996) ................................................................ 15

*Trump v. United States*,
   603 U.S. 593 (2024) ................................................................................. 7

iv

*U.S. Dep't of Air Force v. Fed. Lab. Rels. Auth.*,
  648 F.3d 841 (D.C. Cir. 2011) ........................................................................... 5

*U.S. Dep't of Just. v. Fed. Lab. Rels. Auth.*,
  266 F.3d 1228 (D.C. Cir. 2001) ......................................................................... 5

*United States v. Perkins*,
  116 U.S. 483 (1886) ............................................................................................ 8

*Walton v. House of Representatives*,
  265 U.S. 487 (1924) .......................................................................................... 14

*White v. Berry*,
  171 U.S. 366 (1898) .......................................................................................... 14

*Wiener v. United States*,
  357 U.S. 349 (1958) ............................................................................... 9, 12, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .............................................................................................. 16

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ......................................................................... 16

**Statutes**

5 U.S.C. § 7101(a)(2) .............................................................................................. 3

5 U.S.C. § 1201 ........................................................................................................ 8

5 U.S.C. § 7101 .................................................................................................... 3, 9

5 U.S.C. § 7104 ................................................................................................. 3, 7, 8

5 U.S.C. § 7105(a)(2) ............................................................................. 3, 4, 8, 9, 10

5 U.S.C. § 7105(g) ............................................................................................... 4, 9

5 U.S.C. § 7105(h) .................................................................................................. 4

5 U.S.C. § 7111(d) ................................................................................................ 10

5 U.S.C. § 7118(a)(7)(A) ......................................................................................... 4

5 U.S.C. § 7123(b) .................................................................................................. 9

5 U.S.C. § 7132 ....................................................................................................... 4

5 U.S.C. § 7134 ................................................................................................... 4, 9

28 U.S.C. § 518 ................................................................................................................ 4

**The Constitution**

U.S. Const. art II, § 1, cl. 1 ............................................................................... 1, 7, 21

U.S. Const. art II, § 2, cl. 2 ...................................................................................... 8, 15

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................... 6

**Regulations**

5 C.F.R. § 2423.41(e) ..................................................................................................... 4

5 C.F.R. § 2429.16 .......................................................................................................... 4

**Other Authorities**

FLRA News, "Susan Tsui Grundmann designated FLRA Chairman," (Jan. 3, 2023),
    *available at* https://perma.cc/Q3Q9-LBRT ................................................... 5

## INTRODUCTION

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; *id.* § 3. That executive power encompasses the authority to remove those who aid the President in carrying out his duties. On February 10, 2025, the President exercised this power when he removed Plaintiff Susan Grundmann from her position as Chairman and Member of the Federal Labor Relations Authority (the "Authority" or "FLRA"), an executive branch agency that performs quintessentially executive functions. Plaintiff now challenges her removal, seeking an order that would require her to be reinstalled to her former principal office as a Member of the FLRA. The Court should deny her request because Plaintiff cannot satisfy the requirements necessary to obtain any relief, much less the extraordinary relief of reinstatement, which is beyond the authority of any Article III court to grant.

The Supreme Court recently reaffirmed the President's power to "remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). As described further below, the FLRA wields substantial executive power. It can conduct investigations and seek injunctive relief in federal court, and possesses independent litigating authority to send its own attorneys (not Department of Justice attorneys) to do so. It adjudicates disputes between executive branch agencies in their capacity as employers and their employees over unfair labor practices, has the authority to order a host of legal and equitable remedies against those executive agencies, and can then enforce compliance with those orders. Moreover, it has broad rulemaking authority to promulgate rules and regulations to carry out its statutory mandate. For these reasons, neither of the two narrow exceptions to the President's otherwise unrestricted removal power—for inferior officers with limited authority and for multimember bodies that exercise functions that are legislative and judicial, rather than

1

executive—apply here.  The Authority's Members must therefore be removable at will to ensure democratic accountability.

In any event, the relief that Plaintiff seeks—an injunction compelling Defendants to reinstate her to a position from which the President removed her—should be rejected.  Such relief would be unprecedented, as executive officers challenging their removal have traditionally sought back pay, not reinstatement.  And it would also be unwarranted because the President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with executive power, and because this Court lacks the equitable power to reinstate a principal executive officer removed by the President.

Plaintiff also fails to meet the additional factors that would entitle her to an injunction.  Plaintiff's removal deprives her of employment and salary, but such consequences ordinarily do not amount to *irreparable* injury, as the traditional remedy for such claims has been an award of back pay at the end of the case.  By contrast, an order requiring the President to reinstate a person he has chosen to remove from office would be an extraordinary intrusion on the President's exclusive authority to control the executive branch.  And, because the government is likely to prevail in its contention that Plaintiff's removal was lawful, reinstating Plaintiff to her prior position would jeopardize any actions that the FLRA takes in the meantime.

For all of these reasons, the Court should enter summary judgment in favor of Defendants.

## BACKGROUND

### I.    Statutory Background

The FLRA is an executive branch agency that oversees relations between certain non-postal federal employees, their federal employers, and public-sector unions under the Federal

Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101 *et seq.*[1]   The Authority comprises three Members, appointed by the President with the advice and consent of the Senate, who serve fixed terms of five years.  5 U.S.C. § 7104.  The FSLMRS provides that Members may be removed "only for inefficiency, neglect of duty, or malfeasance in office."  *Id.* § 7104(b).

The FSLMRS defines the rights of certain federal employees, labor organizations, and government agencies.  It notes that "the public interest demands the highest standards of employee performance . . . and the efficient accomplishment of the operations of the Government," and it directs that its provisions "should be interpreted in a manner consistent with the requirement of an effective and efficient Government."  *See* 5 U.S.C. §7101(a)(2), (b).  To accomplish those ends, the Authority wields expansive powers over federal agencies' interactions with their employees.  Specifically, the Authority is tasked with:  determining the appropriateness of units for labor organization representation; supervising or conducting elections to determine whether a labor organization has been selected as an exclusive representative; prescribing criteria and resolving issues related to granting of national consultation rights and compelling need for agency rules or regulations; resolving issues relating to the duty to bargain in good faith; prescribing criteria relating to the granting of consultation rights regarding conditions of employment; conducting hearings and resolving complaints of unfair labor practices; and resolving exceptions to arbitral awards issued under the FSLMRS.  5 U.S.C. § 7105(a)(2)(A)-(H).

The Authority exercises significant executive power to achieve these ends.  For example, when resolving complaints of unfair labor practices under Section 7105(a)(2)(G), the Authority

---

[1] The FSMLRS was, in part, a codification of a labor relations system created by executive order. *See Nat. Treasury Emps.' Union v. Fed. Lab. Rels. Auth.*, 774 F.2d 1181, 1192 (D.C. Circ. 1985); *Am. Fed'n of Gov't Emps. v. Fed. Lab. Rels. Auth.*, 834 F.2d 174, 178 n.9 (D.C. Cir. 1987).

may issue an order requiring an agency or labor organization to "cease and desist from such unfair labor practice;" "requiring the parties to renegotiate a collective bargaining agreement;" "requiring reinstatement of an employee with backpay;" and "including . . . such other action as will carry out the purpose of this chapter." 5 U.S.C. § 7118(a)(7)(A)-(D). Indeed, after the Authority issues an order, the respondent must "provide to the appropriate Regional Director a report regarding what compliance actions have been taken." 5 C.F.R. § 2423.41(e). If the respondent "has not complied with the Authority's order," the matter is referred to the Authority "for enforcement or . . . other appropriate action." *Id.*

More generally, the FSLMRS grants the Authority a broad array of means to achieve its statutory objectives. For example, the Authority may:

> (1) hold hearings; (2) administer oaths, take the testimony or deposition of any person under oath, and issue subpoenas as provided in [5 U.S.C. § 7132]; and (3) may require an agency or labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter.

5 U.S.C. § 7105(g); *see also* 5 U.S.C. § 7105(a)(2)(I) (authorizing the FLRA to take "actions as are necessary and appropriate to effectively administer the provisions of" the FSLMRS). And the Authority has promulgated regulations confirming that broad power. *See* 5 C.F.R. § 2429.16 ("The Authority shall take any actions which are necessary and appropriate to administer effectively the provisions of chapter 71 of title 5 of the United States Code.").

The Authority possesses other significant powers. It is authorized to "prescribe rules and regulations to carry out the provisions of this chapter." 5 U.S.C. § 7134. With the exception of litigation before the Supreme Court as provided in 28 U.S.C. § 518, the Authority may also send its own attorneys to "represent the Authority in any civil action brought in connection with any

function carried out by the Authority pursuant to this title or as otherwise authorized by law." 5 U.S.C. § 7105(h).

The FLRA has exercised these powers to impose wide-ranging relief against other executive agencies, often with unions as intervenors. For example, it has required that the Department of Justice provide employees with union representation when an employee is under investigation for misconduct. *See U.S. Dep't of Just. v. Fed. Lab. Rels. Auth.*, 266 F.3d 1228, 1229 (D.C. Cir. 2001). It has attempted to mandate that the Social Security Administration pay post-judgment interest on liquidated damages awarded to employees through arbitration. *See Soc. Sec. Admin., Baltimore, Md. v. Fed. Lab. Rels. Auth.*, 201 F.3d 465, 467 (D.C. Cir. 2000). And it has attempted to require the United States Air Force to bargain with an employee union regarding uniform requirements. *See U.S. Dep't of Air Force v. Fed. Lab. Rels. Auth.*, 648 F.3d 841, 843 (D.C. Cir. 2011).

## II.    This Case

Plaintiff was confirmed by the United States Senate to a five-year term, expiring on July 1, 2025, as a Member of the FLRA on May 12, 2022. Compl. ¶ 3, ECF No. 1 ("Compl."). On January 3, 2023, then-President Biden designated Plaintiff as the FLRA Chair. *See* FLRA News, "Susan Tsui Grundmann designated FLRA Chairman," (Jan. 3, 2023), *available at* https://perma.cc/Q3Q9-LBRT.

On February 10, 2025, the Deputy Director of the White House Presidential Personnel Office emailed Plaintiff notifying her that the President was removing her as a Member of the FLRA. Compl. ¶ 16. On February 11, 2025, the President named Colleen Kiko Duffy as Chairman of the FLRA. *Id.* ¶¶ 5, 19.

Two days later, on February 13, 2025, Plaintiff filed suit to challenge her removal. *See* Compl. Plaintiff filed a motion for preliminary injunction and summary judgment on February

14, 2025.  Mot. for Prelim. Inj. and Summ. J., ECF No. 4; Mem. of Points and Authorities in Supp. of Pl.'s Mot. ("Pl.'s Mot."), ECF No. 4-1.  Plaintiff seeks a declaratory judgment that she was unlawfully removed as a Member of the FLRA and an injunction requiring Defendant Kiko (and her subordinates, agents, employees, and all other persons who are in active concert or participation with them) to permit Plaintiff to serve as a Member of the FLRA.  *See* Proposed Order, ECF No. 4-4.

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment."  *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003) (citation omitted).  Rather, the dispute must regard a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation."  *Id.*  That is determined by "look[ing] to the substantive law on which each claim rests."  *Mori v. Dep't of the Navy*, 731 F. Supp. 2d 43, 45 (D.D.C. 2010) (citation omitted).  The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party."  *Pro-Football*, 284 F. Supp. 2d at 112.

## ARGUMENT

Plaintiff's challenge to the President's constitutional authority to remove executive branch officials exercising executive powers is without merit.  Further, Plaintiff has not established irreparable harm as necessary to obtain injunctive relief, or that any such harm outweighs the harm

the requested injunction would impose on the government and the public. Thus, this Court should grant Defendants' cross-motion for summary judgment and deny Plaintiff's motions for preliminary injunction and summary judgment.

**I.    Restrictions On The Removal of FLRA Members Are Inconsistent With The President's Constitutional Authority And Are Therefore Unlawful.**

Plaintiff contends that the President did not validly remove her from office because Members of the Federal Labor Relations Authority may be removed only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 7104(b). But FLRA Members are principal officers who lead a freestanding component within the executive branch and exercise executive power. Accordingly, because the entirety of the executive power is vested in the President, *see* Art. II, § 1, cl. 1, the President can remove FLRA Members at will, and summary judgment should be granted for Defendants.

A. The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." Art. II, § 1, cl. 1; *id.* § 3; *see also Severino v. Biden*, 71 F. 4th 1038, 1043–44 (D.C. Cir. 2023). "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010). Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514; *see also Trump v. United States*, 603 U.S. 593, 608 (2024) (explaining the President's power to remove executive officers falls "within the scope of his exclusive authority" and "cannot be subject to further judicial examination").

For nearly a century, the Supreme Court has repeatedly reaffirmed "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L. LLC*

*v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020) (citing *Myers v. United States*, 272 U.S. 52 (1926)).    The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power."  *Id.*  First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could impose for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Seila Law*, 591 U.S. at 216.  Second, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority."  *Seila Law*, 591 U.S. at 218.  Those exceptions represent the "outermost constitutional limits of permissible restrictions on the President's removal power" under current precedent.  *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

B.  Members of the FLRA do not fit within either of these exceptions.  They are not inferior officers with narrowly defined duties; to the contrary, they are principal officers appointed by the President with Senate confirmation.  *See* U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 1201.  They oversee their own department.  *See Free Enterprise Fund*, 561 U.S. at 511 (explaining that a department "is a freestanding component of the Executive Branch, not subordinate to or contained within any other such component[]").  And they are not subservient to any other principal officer. *See* 5 U.S.C. § 7104.

Nor does the *Humphrey's Executor* exception apply.  As the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power.  *Seila Law*, 591 U.S. at 216–17 (quoting *Humphrey's Executor*, 295 U.S. at 632).  But the FLRA is no "mere legislative or judicial aid,"

*Seila Law*, 591 U.S. at 199.  It possesses significant executive authority, including the power to "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications."  *Seila Law*, 591 U.S. at 219; 5 U.S.C. § 7105(a)(2)(G).  Specifically, the Authority "conduct[s] hearings and resolve[s] complaints of unfair labor practices."  5 U.S.C. § 7105(a)(2)(G).  These adjudications "are exercises of—indeed under our constitutional structure they *must be* exercises of—the executive Power."  *Seila Law*, 591 U.S. at 216 n.2 (quotations omitted); *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013).

The FLRA also has the authority to litigate and enforce its orders in federal court.  It can "require an agency or a labor organization to cease and desist" from violations of the statute it administers and "require [the agency or labor organization] to take any remedial action it considers appropriate to carry out the polices" of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–7135.  5 U.S.C. § 7105(g)(3).  The FLRA may petition to enforce such an order in federal court, or to seek "temporary relief" or a "restraining order" when appropriate.  5 U.S.C. § 7123(b); *see Seila Law*, 591 U.S. at 219 (describing authority to enforce in federal court as "quintessentially executive power not considered in *Humphrey's Executor*").  And the FLRA has independent litigating authority to send its own attorneys (not Department of Justice attorneys) to litigate civil actions outside the Supreme Court in connection with any of its functions.  *Id.* § 7105(h); *see also Buckley v. Valeo*, 424 U.S. 1, 138–40 (1976) (recognizing interpreting and enforcing law through litigation as executive function).  These features distinguish the Authority from a purely adjudicatory body.

Finally, the Authority possesses the power to "prescribe rules and regulations to carry out the provisions of [Federal Service Labor-Management Relations Statute] applicable to [it]."  5 U.S.C. § 7134; *see also* 5 U.S.C. § 7105(a)(2)(C) (authorizing FLRA to "prescribe criteria . . .

relating to the granting of national consultation rights under section 7113"); 5 U.S.C. § 7105(a)(2)(D) (authorizing FLRA to "prescribe criteria . . . relating to determining compelling need for agency rules or regulations"). Indeed, the Authority conducts and supervises elections under Section 7111 of the FSLMRS, *see* 5 U.S.C. § 7105(a)(2)(B), "determin[ing] who is eligible to vote in any election" and "establish[ing] rules governing any such election." 5 U.S.C. § 7111(d). Because "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law," an agency "empowered to issue a 'regulation or order' … clearly exercises executive power." *Collins v. Yellen*, 594 U.S. 220, 254 (2021) (cleaned up). In short, the FLRA wields executive power and must therefore be accountable to the President through the removal power. *See Seila Law*, 591 U.S. at 204 ("The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II[.]").

C. Plaintiff's contrary contention (Pl.'s Mot. at 7-10) rests largely on an overbroad reading of *Humphrey's Executor* and the cases that followed. Plaintiff seeks to stretch them beyond their facts to reach an Authority that exercises substantial executive power. The Supreme Court in *Seila Law* made clear, however, that *Humphrey's Executor* does not extend so far. After *Seila Law*, "only a very narrow reading of those cases is still good law" and there is "little to nothing is left of the *Humphrey's* exception to the general rule that the President may freely remove his subordinates." *Severino*, 71 F.4th at 1050 (Walker, J., concurring).[2]

In *Humphrey's Executor*, the Supreme Court upheld the constitutionality of a provision prohibiting removal of Federal Trade Commissioners absent "inefficiency, neglect of duty, or

---

[2] While the government acknowledges that whatever little remains of *Humphrey's Executor* is binding on this Court until overturned by the Supreme Court, *see Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 136 (2023), it preserves the argument that *Humphrey's Executor* was wrongly decided. *See, e.g.*, *Seila Law*, 591 U.S. at 239–51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*").

malfeasance in office." 295 U.S. at 623. Despite reaffirming *Myers*'s then-recent holding that the President "has unrestrictable power . . . to remove purely executive officers," *id*. at 632, *Humphrey's Executor* concluded that *Myers* did not control because the FTC Commissioner at issue was "an officer who occupies no place in the executive department and who exercises no part of the executive power vested by the Constitution in the President," *id*. at 628. Instead, *Humphrey's Executor* understood the FTC to be "an administrative body" that "carr[ied] into effect legislative policies" and "perform[ed] other specified duties as a legislative or judicial aid." *Id*. Those duties, according to the Court, "c[ould ]not in any proper sense be characterized as an arm or an eye of the executive." *Id*. The Court understood the FTC not to be exercising executive power at all but rather to "act[] in part quasi legislatively and in part quasi judicially." *Id*. On that understanding, *Humphrey's Executor* found no constitutional problem with restricting the removal of FTC Commissioners.

To be sure, *Humphrey's Executor* rested on an assumption—that the FTC at the time that case was decided did not exercise executive power—that has since been "repudiated" by the Supreme Court. *Seila Law*, 591 U.S. at 239 (Thomas, J., concurring in part); *see also Morrison*, 487 U.S. at 689 n.28, 691 (retreating from *Humphrey's Executor*'s "quasi-legislative" or "quasi-judicial" rationale, noting that "it is hard to dispute that the powers of the FTC at the time of *Humphrey's Executor* would at the present time be considered 'executive,' at least to some degree"). But that is all the more reason not to expansively read *Humphrey's Executor* as sanctioning removal protections for principal officers exercising executive powers that the Supreme Court did not consider when deciding that case. As the Supreme Court instructed in *Seila Law*, "what matters is the set of powers the Court considered as the basis for its decision" in

*Humphrey's Executor*, "not any latent powers that the agency may have had not alluded to by the Court." 591 U.S. at 219 n.4.

Plaintiff's insistence (Pl.'s Mot. at 7-10) that the FLRA is a bipartisan, multimember board that performs adjudicatory functions, and that Congress wished it to be independent, is thus beside the point. Even if it performs some adjudicatory functions, the Authority exercises executive authority and is therefore not comparable to the FTC as understood by the Supreme Court in *Humphrey's Executor*. *See Humphrey's Executor*, 295 U.S. at 628 (describing FTC Commissioner as officer "who exercises no part of the executive power"). As *Seila Law* made clear, the *Humphrey's Executor* exception applies only to a multimember body that "was said not to exercise *any* executive power," *Seila Law*, 591 U.S. at 216 (emphasis added), which cannot be said of the FLRA.

## II.    Even If The FLRA's Removal Protections Were Lawful, Plaintiff Would Not Be Entitled To Relief.

### A.  Plaintiff Is Not Entitled To Reinstatement.

This Court lacks the power to issue any order reinstating a principal executive officer removed by the President. When executive officers have challenged their removal by the President, they have traditionally sought back pay, not reinstatement. *See Wiener*, 357 U.S. at 350 (suit "for recovery of his salary"); *Humphrey's Executor*, 295 U.S. at 612 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons v. United States*, 167 U.S. 324, 326 (1897) (suit "for salary and fees").[3] That rule reflects

---

[3] Plaintiff may respond by arguing that the officers in *Myers* and *Humphrey's Executor* had died. But Myers and Humphrey were, of course, alive at the time of their removals, yet neither sought an injunction restoring him to office. Each waited, let back-pay claims accumulate, and eventually asserted those claims in court, directly or through an executor. Myers was removed in February 1920, sued for back pay in April 1921, and was later succeeded by his administratrix. *Myers*, 272

the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President. The President cannot be compelled to retain the services of a principal officer whom he no longer believes should be entrusted with the exercise of executive power.

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove. As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful." *Myers*, 272 U.S. at 124 (citation omitted). Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence." *Id*. at 131–32 (citation omitted). And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties? Shall he be continued, I ask again, against the will of the President?" *Id*. at 132 (citation omitted). The injunction Plaintiff seeks raises just this problem.

An injunction reinstating Plaintiff would also exceed the scope of this Court's equitable powers. A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement of a public official is not such a remedy. "It is . . . well settled that a

---

U.S. at 106, 108. And Humphrey's executor sought salary due "from October 8, 1933, when the President undertook to remove him from office, to the time of his death on February 14, 1934." *Humphrey's Executor*, 295 U.S. at 612.

court of equity has no jurisdiction over the appointment and removal of public officers." *In re Sawyer*, 124 U.S. 200, 212 (1888). Instead, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law," for instance through suits for back pay. *Id.*

Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction[]" (emphasis added)); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); Order at 3-4, *Dellinger v. Bessent*, No. 24A790 (U.S. Feb. 21, 2025) (Gorsuch, J., dissenting) (explaining that "by 1880s this Court considered it 'well settled that a court of equity has no jurisdiction over the appointment and removal of public officers'") (quoting *In re Sawyer*, 124 U.S. at 212).

"Perhaps the most telling indication of the severe constitutional problem with the [remedy] is the lack of historical precedent for [it]," *Free Enter. Fund*, 561 U.S. at 505 (citation omitted), and there is no historical precedent for reinstatement. At most, a district court in 1983 effectively reinstated removed members of the multimember U.S. Commission on Civil Rights because that court believed that the commission functioned as a "legislative agency" whose "only purpose" was

14

"to find facts which [could] subsequently be used as a basis for legislative or executive action"—
not to exercise any executive power in its own right. *Berry v. Reagan*, No. 83-cv-3182, 1983 WL
538, at \*2 (D.D.C. Nov. 14, 1983) (citations omitted), *vacated*, 732 F.2d 949 (D.C. Cir. 1983).
That is no support for Plaintiff's insistence that an agency head whom the President has fired may
continue to exercise Article II power after removal.

Plaintiff may contend that the longstanding rule preventing a court from enjoining the
President does not apply because she seeks an injunction against only Chairman Kiko, not the
President.  *See* Compl., Prayer for Relief ¶ 2.  But the President is the "only official with the
statutory and constitutional authority to appoint, remove, and supervise" agency heads.  Order at
6 n.2, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting); *see also*
U.S. Const. art. II, § 2, cl. 2 (vesting authority to appoint principal officers in President alone).
Therefore, any relief ordering the "reinstate[ment]" of Plaintiff "as a member of the Board,"
Compl., Prayer for Relief ¶ 2—what Plaintiff seeks here—would prevent the President from
exercising his lawful Article II authority to select Members of his choosing.  Whether the order is
expressly directed at the President or not, Supreme Court precedents reinforce that courts lack
power to issue any order reinstating a principal executive officer removed by the President.[4]

---

[4] *Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) does not compel a contrary result.  In *Swan*, the
D.C. Circuit held only that the plaintiff, a former member of the National Credit Union
Administration who had been removed by President Clinton, had *standing* to challenge his removal
because his injury could be redressed by the actions of subordinate officials.  *Id.* at 978–81; *see
also id.* at 980–81 ("[W]e hold that the partial relief Swan can obtain against subordinate executive
officials is sufficient for redressability, even recognizing that the President has the power, if he so
chose, to undercut this relief.").  Standing is not at issue in this case, and *Swan* expressly declined
to decide whether courts have the authority to order reinstatement as a remedy, noting that it was
not "determining whether we can order more complete relief[.]"  *Id.* at 981.  For the reasons stated,
a court cannot do so.

### B. Plaintiff Is Not Entitled To Any Injunction.

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). The movant must satisfy a four-prong test, establishing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).[5] Plaintiff has not established any of these factors. And, for the reasons articulated in Part II.A., this Court lacks the authority to issue the relief she requests.

#### 1. Plaintiff Is Not Likely To Succeed On The Merits.

For the reasons discussed in Part I, Plaintiff is not likely to succeed on the merits of her claim. Section 7104(b) is inconsistent with the President's Article II authority and, consequently, violates the Constitution.

#### 2. Plaintiff Cannot Establish Irreparable Harm.

The "high standard for irreparable injury" requires a two-fold showing by Plaintiff: First, because an irreparable injury "must be both certain and great," Plaintiff "must show '[t]he injury complained of is of such imminence that there is a "clear and present" need for equitable relief to

---

[5] To establish entitlement to a permanent injunction, Plaintiff must demonstrate: "'(1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. United States Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). Accordingly, for the same reasons that Plaintiff cannot obtain a preliminary injunction, explained *infra* pp. 16-21, she also cannot obtain a permanent injunction.

prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  And second, "the injury must be beyond remediation." *Id.*

Plaintiff has failed to meet her burden for either of the two required showings.  She principally contends (Pl.'s Mot. at 13) that her ongoing harm stems from the deprivation of her ability to "carry[] out her statutory duties as Chairperson and a Member of the Authority."  But Plaintiff cites no injury of a kind that the Supreme Court has recognized as irreparable in this context.  *See Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974) (holding that, except in "genuinely extraordinary situation," loss of income, face, and reputation do not amount to irreparable harm).  Indeed, court after court in this Circuit and others has concluded that loss of employment does not constitute irreparable harm.  *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

And to the extent that Plaintiff attempts (Pl.'s Mot. at 12) to distinguish her case from a "routine case," courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of

Manpower); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. GAO Emps. Fed. Credit Union*, No. 88-cv-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).  Accordingly, when principal officers have been removed from their posts, they generally have challenged those removals in suits for back pay.  *See Humphrey's Executor*, 295 U.S. at 612 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349–51 (same).

Plaintiff also argues (Pl.'s Mot. at 12-13) that the purported deprivation of her ability to carry out her statutory duties distinguishes this case from a typical loss-of-employment dispute. She relies for this proposition on a case that is plainly distinguishable and was later vacated by the D.C. Circuit: *Berry v. Reagan*, No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated*, 732 F.2d 949 (D.C. Cir. 1983).  In *Berry v. Reagan*, President Reagan removed several members of the Commission on Civil Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. *Id.* at *1, *5.  But Plaintiff and the FLRA are not similarly situated to the plaintiffs in *Berry*.  First, the FLRA "continues to operate" with a quorum, as Plaintiff concedes, *see* Pl.'s Mot. at 5.[6] Accordingly, Plaintiff and the FLRA "are not similarly situated" to the plaintiff in *Berry* because the FLRA "is not and will not be shuttered; it continues to operate."  *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018).  And second, like in *English*, "any such harm" to Plaintiff coming solely from her not functioning as a Member of the FLRA "can be remediated in the ordinary course of this case."  *Id.*

---

[6] Even if the FLRA were left without a quorum, *Berry* would still be distinguishable.  In *Berry*, the harm was irreparable in part because the commission was set to expire.  1983 WL 538, at *5. But here, the FLRA will not cease to exist and could resume its functioning upon the resumption of a quorum.

Plaintiff next argues (Pl.'s Mot. at 13) that denying her preliminary relief would have a "disruptive effect on the Authority and its ability to carry out its work in an efficient manner." But as explained, unlike in *Berry*, the FLRA can continue to fulfill its mandate without Plaintiff, since it continues to have a quorum and, in any event, could once again have all its seats filled through the appointment and confirmation of a different individual to Plaintiff's seat. Accordingly, the fear that its remaining Members could "deadlock[]" and delay the adjudication of cases, Pl.'s Mot. at 13, is speculative and no basis for finding irreparable harm. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 298 (rejecting claimed injury as "far too speculative to warrant preliminary injunctive relief"). Moreover, Plaintiff is not harmed by the FLRA's purported inability to carry out its work in an efficient manner, and thus lacks Article III standing to obtain relief based on the interests of the FLRA or regulated parties. *See Gill v. Whitford*, 585 U.S. 48, 66 (2018) (Under Article III, "a plaintiff's remedy must be 'limited to the inadequacy that produced [her] injury in fact.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

At bottom, the contention that her removal will negatively impact the FLRA simply repackages Plaintiff's contention that she is the best person for the position and that the President had no sound reason for removing her—*i.e.*, that an FLRA with Plaintiff as a Member would better serve the agency's mission than one without her. But that is the President's prerogative to determine.

### 3. The Balance Of Equities And Public Interest Favor Defendants.

The balance of the equities and public interest weigh strongly against Plaintiff's reinstatement as a Member of the FLRA. Because the FLRA is an executive agency exercising executive power, an injunction functionally reinstating one of its principal officers would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive. *See* Order at 10, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting)

19

(describing how "direct[ing] the President to recognize and work with an agency head whom he has already removed" "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising" and thus causes irreparable harm).  The President cannot be compelled to retain the services of a principal officer whom the President no longer believes should be entrusted with the exercise of executive power. Such a remedy would undermine the accountability of the Executive Branch enshrined in the Constitution.  The President "is elected by the entire Nation" and all executive officers "remain[] subject to the ongoing supervision and control of the elected President."  *Seila Law*, 591 U.S. at 224.  Adding additional exceptions to that constitutional rule—and then reinstating principal officers subject to those additional exceptions—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enterprise Fund*, 561 U.S. at 499.

Moreover, the public interest is better served by an FLRA Member who holds the President's confidence and, accordingly, will more effectively serve him in executing his duties as Chief Executive.  "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria and Restaurant Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)).  And it is especially important that the President be granted such latitude to oversee the FLRA, which performs a critical role in regulating the Executive Branch's own workforce.  *See Seila Law*, 591 U.S. at 204.  "Allowing another branch of government to insulate executive officers from presidential control . . . would sever a key constitutional link between the People and their government," contrary to the public interest.  Order at 12, *Dellinger v. Bessent*, No. 25-5028 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting).

20

Furthermore, because the government is likely to succeed in affirming the constitutionality of Plaintiff's removal on further review, *see, e.g.*, *Seila Law*, 591 U.S. at 239–51 (Thomas and Gorsuch, JJ., concurring in part) (advocating for the Court to "reconsider *Humphrey's Executor in toto*"), any actions the Authority takes upon Plaintiff's reinstatement will be called into question and potentially voidable. *See Lucia v. Sec. & Exch. Comm'n*, 585 U.S. 237, 251 (2018) ("This Court has also held that the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official."); *cf. Collins*, 594 U.S. at 257-58 (explaining that where there is a "constitutional defect in the statutorily prescribed method of appointment to that office," actions taken may be regarded as "void"). Thus, Plaintiff's claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1.

## CONCLUSION

For all of these reasons, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiff's motions for preliminary injunction and summary judgment, and enter summary judgment in favor of Defendants.

Dated: February 25, 2025                    Respectfully submitted,


                                            ERIC J. HAMILTON
                                            *Deputy Assistant Attorney General*

                                            CHRISTOPHER R. HALL
                                            *Assistant Branch Director*

                                            /s/ *Alexander W. Resar*
                                            ALEXANDER W. RESAR
                                            *Trial Attorney*
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, DC 20530
                                            Telephone: (202) 616-8188
                                            Email: alexander.w.resar@usdoj.gov

                                            *Counsel for Defendants*