UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN TSUI GRUNDMANN,

*Plaintiff*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-425 (SLS)
Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Susan Tsui Grundmann was removed by the President from her position on the Federal Labor Relations Authority (FLRA) in February 2025. She came to this Court a few days later, claiming that her removal without cause violated the statutory protections afforded to FLRA members. The Government did not contest that claim. It instead argued that those statutory protections violated Article II of the U.S. Constitution. On March 12, 2025, the Court ruled for Ms. Grundmann, ordering her de facto reinstatement for the remainder of her term. Almost two months later, the Government appealed the Court's decision. And nearly three weeks after that, it now moves to stay the Court's order pending appeal. The Court denies this belated request.

## BACKGROUND

President Donald J. Trump removed Ms. Grundmann from the FLRA on February 10, 2025, when the Deputy Director of the White House Office of Presidential Personnel sent her a two-sentence email informing her of her termination. *See* Compl. ¶ 16, ECF No. 1 (first sentence); *see also id.*, Ex. A, ECF No. 1-1 (second sentence). Ms. Grundmann challenged her removal by filing a Complaint in this Court on February 13, 2025, claiming that the President and the Chairman of the FLRA had violated the removal protections guaranteed by the Federal Service Labor-

Management Relations Statute. *See* Compl. ¶¶ 22–25 (citing 5 U.S.C. § 7104); *id.* ¶¶ 4–5. Ms. Grundmann then filed a combined Motion for Preliminary Injunction and Summary Judgment on February 14, 2025. *See* Pl.'s Mot. Prelim. Inj. & Summ. J., ECF No. 4. The Government responded by arguing that the statutory removal protections ran afoul of Article II of the U.S. Constitution. *See* Defs.' Cross-Mot. Summ. J., ECF No. 11; Defs.' Opp'n to Prelim. Inj., ECF No. 12. The Parties briefed the motions. *See* Pl.'s Opp'n Cross-Mot. Summ. J., ECF No. 15; Pls.' Reply Supp. Prelim. Inj., ECF No. 16; Defs.' Reply Supp. Cross-Mot. Summ. J., ECF No. 18. And the Court ruled for Ms. Grundmann on March 12, 2025, ordering de facto reinstatement in accordance with D.C. Circuit precedent. *See* Order, ECF No. 21; Mem. Op., ECF No. 22; *see also Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996); *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023).

That brings us to the second wave of proceedings. The Government appealed the Court's decision on May 8, 2025, only a few days before the sixty-day deadline. *See* Notice of Appeal, ECF No. 24; *see also* D.C. Circuit Rule 4(a)(1)(B) (providing sixty days to appeal). Nearly three weeks after that, on May 27, 2025, it filed a Motion to Stay the Court's Order Pending Appeal, ECF No. 26. The Court now considers this stay motion.

## LEGAL STANDARD

"A stay pending appeal is an extraordinary remedy." *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020) (citing *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)). "It is 'an intrusion into the ordinary processes of administration and judicial review," *id.* (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up)), "and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant,'" *Nken*, 556 U.S. at 427 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). "It is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular

case." *Id.* at 433 (cleaned up). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

"A court is supposed to consider four factors in connection with a stay motion: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *M.M.V.*, 459 F. Supp. 3d at 4 (cleaned up). As to the first factor, the D.C. Circuit has said that the chance of success on the merits must be "substantial," *id.* (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977), and "a movant's failure to satisfy this stringent standard . . . is 'an arguably fatal flaw for a stay application,'" *id.* (quoting *Citizens for Resp. & Ethics in Wash. v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam)). As to the second factor, "[w]here there is a low likelihood of success on the merits, a movant must show a proportionally greater irreparable injury[.]" *Id.* (citing *Cuomo*, 772 F.2d at 974). And the final two factors "merge when the Government is the opposing party." *Id.* (quoting *Nken*, 556 U.S. at 435).

## DISCUSSION

The Government has failed to meet its burden to justify a stay pending appeal. The Court is not convinced that the Government is likely to succeed on the merits, that it will be irreparably injured absent a stay, or that the balance of equities favors a stay.

### A.   Likelihood of Success on the Merits

For all of the reasons explained in the Court's summary judgment opinion, *see* Mem. Op., the Government has failed to show a substantial likelihood of success on the merits. *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), recognized that Congress may constitutionally limit the President's removal authority when creating "multimember expert agencies that do not wield

3

substantial executive power." *Id.* at 218 (discussing the exception recognized in *Humphrey's Ex'r v. United States*, 295 U.S. 602 (1935)); *see also id.* at 216 (citing *Wiener v. United States*, 357 U.S. 349, 356 (1958)). And the FLRA fits that description. First, it shares "several organizational features" with the FTC from *Humphrey's Executor*—the same features that "helped explain [the Court's] characterization of the FTC as non-executive." *Seila L.*, 591 U.S. at 216. Namely, it is a small multimember agency balanced along partisan lines with staggered terms and duties ordered toward expertise. *See id.* Second, it does not wield substantial executive power. It may conduct hearings and resolve complaints, much like the War Claims Commission in *Wiener*. *See Seila L.*, 591 U.S. at 216. It may enforce its orders in court, like the FTC as described in *Humphrey's Executor*. *See* 295 U.S. at 620–21. And its power to promulgate regulations governing the administration of labor disputes in the federal workforce pales in comparison to the wide-ranging regulatory power chastised in *Seila Law*. *See* 591 U.S. at 218 ("[T]he [CFPB] Director possess[ed] the authority to promulgate binding rules fleshing out 19 federal statutes, including a broad prohibition on unfair and deceptive practices in a major segment of the U.S. economy.").

The Government argues that the Supreme Court's recent stay order in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), demands the opposite result. There, the Supreme Court granted a stay in part because it thought "the Government [was] likely to show that both the NLRB and MSPB exercise considerable executive power." *Id.* at 1415. But this single sentence is not enough to alter the Court's prior analysis as to the FLRA. The Court already catalogued the powers wielded by the FLRA and triangulated where each one fits within *Humphrey's Executor*, *Wiener*, and *Seila Law*, ultimately concluding that the FLRA does not exercise substantial executive power. *See* Mem. Op. at 13–16. The *Wilcox* order does not identify which of the purportedly executive powers exercised by the NLRB and the MSPB might be "considerable." *Wilcox*, 145 S. Ct. at 1415.

So the Court cannot be sure that those powers are present in this case. Nor does the Court believe that the Supreme Court meant to announce a new rule by using the adjective "considerable," *id.*, instead of "substantial," *Seila L.*, 591 U.S. at 218.

The Government believes that the NLRB and the FLRA should rise or fall together, pointing to D.C. Circuit language previously cited by the Court: "[T]he 'structure, role, and functions of the [FLRA] were closely patterned after those of the NLRB.'" Mot. Stay at 3 (quoting Mem. Op. at 16 (quoting *Libr. of Cong. v. FLRA*, 699 F.2d 1280, 1287 (D.C. Cir. 1983))). But there are a few problems with this argument.

*First*, the language about structure has nothing to do with the powers exercised by the FLRA. The Court already explained in its summary judgment opinion that it reads *Seila Law* "as teaching that the *Humphrey's Executor* exception applies in two steps." Mem. Op. at 9 (citing *Seila L.* 218–19). The first question is whether an agency's structure triggers the exception. *See id.* The second is whether the agency exercises substantial executive power. *See id.* The Court therefore sees no tension when it comes to the language about structure.

*Second*, the language about roles fits most neatly within the first question rather than the second. When *Seila Law* identified the "organizational features" of the FTC that "helped explain" *Humphrey's Executor's* "characterization of the FTC as non-executive," it highlighted that the FTC's "duties" were apolitical and demanded "the trained judgment of a body of experts." *Seila L.*, 591 U.S. at 216 (cleaned up). The FLRA similarly plays the role of providing "trained judgment" by a "body of experts." *Id.*

*Third*, the language about functions may be distinguished from the question about power. *See id.* at 216 ("'To the extent that [the FTC] exercise[d] any executive *function*[,] as distinguished from executive *power* in the constitutional sense,' it did so only in the discharge of its 'quasi-

legislative or quasi-judicial powers.'" (emphasis in original) (quoting *Humphrey's Ex'r*, 295 U.S. at 628)). And even if that were not the case, the very same D.C. Circuit opinion said that "[t]he *scope* of collective bargaining is far broader in the private sector," where the NLRB governs, as opposed to the public sector, which is the FLRA's wheelhouse. *Libr. of Cong.*, 699 F.2d at 1287 (emphasis added). And *Seila Law* taught that the scope of an agency's powers impacts whether those powers are substantial. *See* 591 U.S. at 218 (identifying as problematic that the CFPB Director has the power to "promulgate binding rules . . . in a *major segment* of the U.S. economy" (emphasis added)).

It is therefore not obvious that the NLRB and the FLRA are tied at the hip. This is especially true since the Supreme Court did not explain which of the NLRB's purportedly executive powers were likely to be considerable. The Government has failed to meet its burden as to the first factor. And failure on this factor is "an arguably fatal flaw for a stay application." *M.M.V.*, 459 F. Supp. 3d at 4 (quoting *Citizens for Resp. & Ethics in Wash.*, 904 F.3d at 1019).

**B.      Irreparable Injury and the Balance of Equities**

Nor has the Government shown irreparable injury absent a stay. They again point to the *Wilcox* order, which said that it "reflect[ed] the [Supreme Court's] judgment that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty." Mot. Stay at 3 (quoting *Wilcox*, 145 S. Ct. at 1415). Even though this language seems to speak more to the balance of equities rather than irreparable harm, *see Wilcox*, 145 S. Ct. at 1415 (citing *Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (per curiam) ("The purpose of . . . interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." (citation omitted))), the Government argues

that it can be read to support the proposition that the "Defendants will be irreparably harmed absent a stay, such that the balance of the equities and public interest overwhelmingly favor a stay pending appeal," Mot. Stay at 3. In the Government's view, "no basis exists for distinguishing the Supreme Court's assessment of the equities in the *Wilcox* Stay Order from those at play here[.]" *Id.* But the Court sees two important distinctions that illustrate why the propriety of a stay "is dependent upon the circumstances of the particular case." *Nken*, 556 U.S. at 433 (cleaned up).

*First*, any harm to the Government will be particularly short-lived because the President will be free to nominate her replacement in eighteen days on July 1, 2025, when her five-year term comes to an end. *See* Compl. ¶ 3. Under the statute, Ms. Grundmann may continue to serve only until her replacement takes office. *See* 5 U.S.C. § 7104(c). This means that a stay is not necessary "to avoid the disruptive effect of the repeated removal and reinstatement of officers during the pendency of this litigation." *Wilcox*, 145 S. Ct. at 1415.

*Second*, the Government's actions in this case reflect a lack of urgency inconsistent with irreparable harm. It waited nearly two months after the Court's March 12, 2025, summary judgment decision to file its notice of appeal on May 8, 2025. *See* Notice of Appeal. And it waited almost another three weeks to file this motion to stay on May 27, 2025. *See* Mot. Stay at 4. This is not the sort of reaction one expects from a party claiming irreparable injury. *See Lightfoot v. District of Columbia*, No. 01-cv-1484, 2006 WL 175222, at *8 (D.D.C. Jan. 24, 2006) (saying government defendants' "relative inaction . . . indicate[d] that they themselves do not perceive the possible injury as 'irreparable'" where they did not appeal to the D.C. Circuit until almost a month after the district court denied their motion for reconsideration, where they did not ask for an expedited appeal, and where they did not file a motion for stay pending appeal until about three weeks after appealing); *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977) (saying

7

"applicants' delay in filing their [certiorari] petition and seeking a stay vitiates much of the force of their allegations of irreparable harm" where they waited the maximum ninety days before filing their petition); *cf. Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) ("Courts have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.'" (quoting *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005)); *id.* ("The D.C. Circuit has found that a delay of forty-days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered' the 'conclusion that an injunction should not issue,' particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm." (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)). The Government seemed unbothered that Ms. Grundmann was back at her desk for months on end. The Court therefore struggles to understand how the harm inquiry has suddenly changed.[1]

And other facts favor Ms. Grundmann as well. First, were the Court's order to be stayed, the FLRA would retain only two of its three Members, running the risk of deadlock. *See* Mem. Op. at 33; *see also id.* ("[D]uring the eighteen-month period that Plaintiff Grundmann served as part of a two-member Authority, approximately one-third of the Authority's cases deadlocked, leading to duplicative disputes and resource waste." (cleaned up)). As the Court previously noted, this deadlock would come at a particularly bad time "considering the widespread firings across the federal workforce in recent months." *Id.* (citations omitted). Second, and relatedly, Congress has

---

[1] One would expect an irreparable injury to cause the Government to act the way it did in *Harris v. Bessent*, No. 25-cv-412, 2025 WL 679303 (D.D.C. Mar. 4, 2025), and *Wilcox v. Trump*, No. 25-cv-334, 2025 WL 720914 (D.D.C. Mar. 6, 2025). In *Harris*, the Government appealed the district court's removal decision, No. 25-cv-412, ECF No. 41, and filed a motion to stay pending appeal, *id.*, ECF No. 42, on the very same day that the district court issued its order. And in *Wilcox*, the Government appealed the district court's removal decision on the same day, No. 25-cv-334, ECF No. 36, and filed a motion to stay pending appeal the next day, *id.*, ECF No. 39.

already balanced the equities in a way that counsels against allowing deadlock. *See id.* at 33–34 (citation omitted). It has said that "labor organizations and collective bargaining in the civil service are in the public interest" and that "the public interest demands . . . the efficient accomplishment of the operations of the Government." 5 U.S.C. § 7101(a)(2). The Court made these points in its prior opinion, *see* Mem. Op. at 33–34, and the Government did not address them in the instant motion, *see* Mot. Stay. The Government has not satisfied the stringent requirements to justify a stay pending appeal.

## CONCLUSION

For the foregoing reasons, the Court denies the Defendants' Motion to Stay the Court's Order Pending Appeal, ECF No. 26.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   June 13, 2025